with this opinion.[39]

Maria LUPINACCI, Plaintiff
Below, Appellant,

v.

THE MEDICAL CENTER OF DELA-
WARE, Christiana Care Health Sys-
tems, and David C. Larned, M.D., De-
fendants Below, Appellees.

C.A. No. 98C–01–095.

Supreme Court of Delaware.

Submitted: May 21, 2002.

Decided: Sept. 4, 2002.

Bernard A. Van Ogtrop, Esquire, of Seitz, Van Ogtrop & Green, Wilmington, Delaware, for Appellant.

John A. Elzufon, Esquire, and Colleen D. Shields, Esquire, of Elzufon, Austin, Reardon, Tarlov and Mondell, P.A., Wilmington, Delaware, for Appellees The Medical Center of Delaware and Christiana Care Health Systems.

Anne L. Naczi, Esquire, of Griffin and Hackett, P.A., Georgetown, Delaware, for Appellee David C. Larned, M.D.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court en Banc.

BERGER, Justice:

In this malpractice action, we consider whether the trial court erred in granting judgment as a matter of law in favor of the defendant doctor at the close of plaintiff's case. Plaintiff claimed that her doctor negligently failed to issue instructions for her post-operative care and that the defendant hospital's nurses negligently failed to alert the doctor to signs of post-operative complications. Because the evidence showed that, even without receiving instructions from the doctor, the nurses checked plaintiff for signs of complications, the trial court held that the doctor's omission could not have been the proximate cause of plaintiff's injury. Generally, proximate cause is a question of fact for the jury. In this case, there was evidence from which a jury could have concluded that, with proper instructions from the doctor, the nurses would have alerted him to possible complications. Accordingly, we reverse the trial court's grant of judgment as a matter of law for the doctor.

The jury did consider other claims against the doctor as well as the claims against the hospital, and returned verdicts for the defendants. It did so, however, knowing that the doctor had been relieved of any liability for failing to properly instruct the nursing staff. Given the nature of the doctor's alleged negligence, we conclude that the trial court's erroneous ruling in his favor likely impacted the jury's evaluation of the claims against the hospital and its nursing staff. As a result, we hold that the claims against the hospital must be retried together with the claim against the doctor for negligent failure to issue instructions.

I. Factual and Procedural Background

On October 2, 1995, Maria Lupinacci was injured in an auto accident. She complained of double vision and Dr. David Larned determined that she suffered an "orbital blowout" in her right eye, which occurs when the skull is fractured near the eye orbit. On January 17, 1996, Larned performed two surgeries at the Medical Center of Delaware ("MCD") to correct Lupinacci's condition. He wrote post-operative notes following the first surgery, but not following the second. The notes were relatively general and did not instruct nurses to look for specific symptoms of complications.

Lupinacci stayed in the hospital overnight for observation. At some point in the early evening, a patch or gauze was placed over Lupinacci's right eye, although Larned had not ordered that treatment. Tricia Riedel was the nurse on duty when Lupinacci was brought in from the second surgery at about 7:00 p.m. Lupinacci's pain level at that time was charted at 4 on a scale of 0–10, with 10 being the most severe level of pain. Riedel made a chart entry at 9:00 p.m. noting swelling, and at 9:30 p.m. she gave Lupinacci Percocet to relieve her pain. Reidel also noted that Lupinacci's eye dressing was moist from drainage. She did not alert Larned to any

of her findings because she did not consider them to be abnormal. Riedel also testified that, without special orders, she would not contact a surgeon if a patient's pain level was less than 8.

Monica Weir monitored Lupinacci during the 11 p.m.—7 a.m. shift. Although Weir was not familiar with the potential complications of orbital blowout surgery, she was an experienced ophthalmic nurse. According to her notes [1], Weir checked on Lupinacci just before 1 a.m. on January 18th, and rated Lupinacci's pain as being a "2+" on a 10 point scale. At trial, Weir testified that she examined Lupinacci's eye for bleeding and swelling at that time, but noted no change in Lupinacci's status.

Lupinacci claims that she summoned Weir at around 3 a.m., to complain of intolerable pain, and that the nurse gave her pain medication at that time. There was no note of this encounter in Weir's clinical records, however, and Larned testified that Lupinacci told him the next morning that she had not summoned the nurse during the night. Weir checked on Lupinacci at about 4 a.m., and performed a routine pain assessment. She also changed the dressing on Lupinacci's eye at that time, and did not note the presence of any bruising or swelling. Weir noted blood on the eye dressing, but concluded that the bleeding was not a change from Lupinacci's earlier condition. At no point during the night did any nurse call Larned or another doctor to attend to Lupinacci, and the record would support a finding that no nurse checked whether Lupinacci could see out of her surgical eye. When Larned returned the next morning, he noted swelling and bloody discharge, both symptoms of hemorrhaging. He operated immediately, and discovered the presence of a "slow bleed," which had been putting pressure on Lupinacci's right eye throughout the night. The hemorrhage ultimately caused Lupinacci to lose her sight in that eye.

Larned testified that the surgical procedure he performed usually involves minimal pain, meaning pain that can be controlled by oral analgesics. He operated on Lupinacci twice because he was concerned that the implant he placed in her eye during the first procedure was too large and was compressing her orbit. After the second surgery, Lupinacci could see out of the right eye and the nurse's notes indicate no swelling. Lupinacci was transferred to the surgical floor with orders only to elevate her head and apply ice full time.

Larned explained that swelling, bleeding, and/or pain are signs of complications that would require his attention. He did not specifically instruct the nurses to look for those symptoms, however, because that is a standard part of a nurse's training. Larned disagreed with Riedel's testimony that she would only call a doctor if the patient's pain were at level 8 or above. Larned said that an increase in pain, even to a level of 5 or 6, would be cause for alarm and should precipitate a call. Larned also testified that, based on Lupinacci's condition when he arrived on the morning after surgery, her eye probably was bruised and swollen a few hours earlier, when Weir did her 4 a.m. and 5 a.m. checks. Such swelling and bruising, according to Larned, should have prompted a call to him.

Lupinacci alleged that Larned was negligent in several respects, including his failure to write specific post-operative orders that would have alerted the nurses to possible complications from the second sur-

1. Weir testified that she had no actual recollection of Lupinacci's condition, and that she was relying entirely on her interpretation of clinical notes.

gery. Lupinacci also alleged that MCD's nurses negligently failed to provide appropriate care. At trial, after Lupinacci rested her case, Larned moved for judgment as a matter of law. The Superior Court granted Larned's motion, finding that his failure to issue instructions for the nurses was not the proximate cause of Lupinacci's injury because the nurses checked on Lupinacci even without such orders. The jury considered Lupinacci's remaining claims and returned verdicts in favor of MCD and Larned. Lupinacci moved for a new trial pursuant to Superior Court Rule 59,[2] but the Superior Court denied her motion. This appeal followed.

## II. Discussion

The first issue is whether the Superior Court erred in granting judgment as a matter of law in favor of Larned and, thereafter, in denying Lupinacci's motion for a new trial. In deciding Larned's motion, "the duty of the trial judge is to determine whether or not under any reasonable view of the evidence the jury could justifiably find in favor of [Lupinacci] and against [Larned]."[3] The evidence must be evaluated in the light most favorable to Lupinacci and, if there are material issues of fact in dispute, the motion must be denied.[4]

■ Applying this standard, we find that a reasonable jury could have concluded that Larned's failure to issue appropriate instructions was the proximate cause of Lupinacci's injury. Although the nurses knew to watch for swelling, bleeding and/or pain, they were not aware that this type of surgery usually involves minimal pain and should not involve any bleeding. Weir testified that she noticed blood on Lupinacci's eye dressing at 4 a.m., but did not notify Larned because she did not think the bleeding represented a change in Lupinacci's condition. But there was testimony that the nurses should have contacted the doctor if they observed any bleeding, and presumably they would have done so if given appropriate instructions. The same is true for the level of pain and swelling. Lupinacci complained of serious pain at about 3 a.m. and was given pain medication, but no one called Larned. Over the next two hours, Weir checked Lupinacci twice but observed no symptoms severe enough to call Larned. Yet the doctor himself testified, based on what he observed at 7:30 that morning, that Lupinacci's eye probably was bruised and swollen at the time the earlier checks were done. Larned said he would have been "alarmed" by Lupinacci's condition and would have expected a call.

The issue of proximate cause is generally a question of fact for the jury.[5] This record presents enough evidence for a reasonable jury to conclude that the nurses failed to report symptoms of complications because they used their general training to assess Lupinacci, when they should have received specific instructions from Larned requiring them to report any bleeding, and much lower levels of pain and swelling. Accordingly, the trial court should have denied the motion for judgment as a matter of law.

**2.** Superior Court Rule 59 states: "A new trial may be granted as to all or any of the parties and on all or part of the issues in an action in which there has been a trial for any of the reasons for which new trials have heretofore been granted in the Superior Court." Del. Sup.Ct. R. 59(a).

**3.** *Ebersole v. Lowengrub,* 208 A.2d 495, 498 (Del.1965).

**4.** *Moody v. Nationwide Mut. Ins. Co.,* 549 A.2d 291, 294 (1988).

**5.** *Amalfitano v. Baker,* 794 A.2d 575, 577 (Del. 2001).

■ Lupinacci also argues that the Superior Court abused its discretion in not granting her a new trial against MCD. She contends that no reasonable jury could have found for MCD based on the evidence presented.[6] At trial, Lupinacci offered expert evidence that MCD's nurses breached the standard of care in several respects, including their failure to check Lupinacci's pain level and their failure to chart the results of their periodic patient assessments. MCD offered its own expert testimony that: (i) the standard of care was not as Lupinacci's expert opined, and/or (ii) the nurses met that standard of care. The jury was free to accept the opinion of MCD's expert and reject that of Lupinacci's expert. Accordingly, since there was evidence to support either conclusion, the jury's determination was not against the great weight of the evidence, and the Superior Court did not abuse its discretion in denying Lupinacci a new trial with respect to MCD.

■ The final issue, on which this Court requested supplemental briefing, is whether MCD should be required to stand trial again when Lupinacci's claim against Larned is retried. In *Chrysler v. Quimby*,[7] this Court held that a partial retrial could be ordered if: "[t]he issue to be retried [is] clearly severable from the other issues;... [and] no injustice will result from limiting the issue on retrial."

Courts in other jurisdictions have held that partial retrials are inappropriate where questions of several defendants' liability are intertwined, even if one defendant has obtained a jury verdict in his favor. In *Williams v. Slade*,[8] for example, a passenger who was in a car accident filed negligence claims against both drivers. The trial court granted a directed verdict in favor of one driver (Treadwell) and the jury returned a verdict in favor of the other driver (Slade). The appellate court found that the directed verdict was granted erroneously and ordered a new trial as to both defendants, stating:

> Here the subtle subjectiveness of jury determination leaves this court in doubt as to the propriety of the jury's determination that defendant Slade was not negligent... [W]e cannot be sure what effect it had upon the jury's determination as to Slade's negligence when the jury was deprived of the opportunity to adjudge the responsibility of both Treadwell and Slade together and was left with only an all or nothing choice as to defendant Slade.... The jury should have been given the opportunity to view the accident comprehensively, taking into its vista the acts and omissions of both Treadwell and Slade.[9]

We are satisfied that here, as in *Williams*, the acts and omissions of Larned and MCD are intertwined. Lupinacci claims that both Larned and the MCD nurses failed to provide adequate post-operative care. According to Lupinacci, Larned should have given specific instructions concerning the circumstances under which he wanted to be called. The nurses, who had no such instructions, should have called Larned to request instructions and, even without instructions, should have monitored Lupinacci more closely. We conclude that, in order to fully appreciate each party's conduct, as well as the potential liability of either party or both, the jury must be allowed to

6. *Storey v. Camper,* 401 A.2d 458 (Del.1979).

7. 144 A.2d 123, 136 (Del.1958).

8. 431 F.2d 605 (5th Cir.1970).

9. *Id.* at 609. *See, also: Kord's Ambulance Service v. White,* 14 Ariz.App. 294, 482 P.2d 903 (1971).

consider the claims against both.. Applying *Quimby,* we find that the claims are not clearly severable, and a partial retrial may result in an injustice to Lupinacci.

### III. Conclusion

Based on the foregoing, this matter is REVERSED and REMANDED for a new trial against Larned, for failure to issue appropriate post-operative orders, and MCD.