Charles KUCZYNSKI, Valli (Guzzo) Kuczynski, Jerry Channell, and Sharon (Myers) Hooke, Plaintiffs,

v.

William MCLAUGHLIN and Jim Millman, Defendants.

C.A. No. 00C–08–175–JRS.

Superior Court of Delaware, New Castle County.

Submitted: May 12, 2003.

Decided: Aug. 27, 2003.

Michael D. Carr, Wilmington, Delaware, for Plaintiff Channell.

Robert K. Pearce, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, Delaware, for Defendant Millman.

Bruce W. McCullough, McCullough & McKenty, Wilmington, Delaware, for Defendant McLaughlin.

Thomas P. Leff, Wilmington, Delaware, for Counterclaim Defendant Channell.

## OPINION

SLIGHTS, J.

### I.

On July 17, 1999, at approximately 9:30 p.m., two powerboats collided on the waters of the Chesapeake and Delaware Canal ("C & D Canal") just east of the St. George's bridge. A vessel owned by plaintiff, Charles Kuczynski ("Kuczynski"), and operated by plaintiff, Jerry Channel ("Channel"), was struck from behind by a vessel owned and operated by the defendant, William McLaughlin ("McLaughlin"). At the time of the collision, a third vessel (also a powerboat) owned and operated by the defendant, James Millman ("Millman"), had just passed the Kuczynski vessel on the starboard side without incident. Kuczynski, Channel and the other passengers of the their vessel (collectively "plaintiffs") have brought suit against both McLaughlin and Millman. With respect to Millman, plaintiffs allege that even though he operated a "non-contact" vessel, Millman owed a duty to the plaintiffs to warn them and McLaughlin of a collision he knew was about to occur. Plaintiffs also allege that Millman's negligent operation of his vessel was a proximate cause of the collision between the McLaughlin and Kuczynski vessels.

Millman has moved for summary judgment on the ground that, as the operator of a "non-contact" vessel, he owed no duty to the plaintiffs as a matter of law. Because the Court has determined that the relationship among boat operators on a navigable waterway is of a nature that a duty of care necessarily must be (and tra-ditionally has been) recognized, the motion for summary judgment is **DENIED**.

### II.

Millman, McLaughlin and their families spent the afternoon and early evening on July 17, 1999 boating in the Delaware River near the Delaware Memorial Bridge and then on the western end of the C & D Canal in an area known as Sandy Point. Once there, the Millman and McLaughlin families dropped anchor and had a picnic dinner. At approximately 8:30 p.m., they headed for their home port in Delaware City. Millman was more familiar with the C & D Canal, so he led the way. McLaughlin followed approximately 100 yards behind Millman and approximately 30 feet to his port side. The two boats maintained a speed of approximately 40 miles per hour. Darkness was falling as they entered Delaware waters. Both Millman and McLaughlin had activated their vessels' running lights, and both felt the waterway was illuminated adequately by those lights and by shore lights.

The plaintiffs had also traveled to the western end of the C & D Canal on July 17 and were also returning to their home port in Delaware City that evening. Just before 9:30 p.m., Kuczynski surrendered the helm of his boat to Channel and went below to the cabin of his 22 foot cutty cabin powerboat. The Kuczynski vessel was traveling approximately 15–20 miles per hour. The Millman vessel first encountered the Kuczynski vessel approximately 100 yards east of the St. George's bridge at or near 9:30 p.m. Millman acknowledges that he did not see the Kuczynski vessel until he was beside it or had already passed it on the starboard side.[1] Within seconds after passing the Kuczyn-

---

1. Millman believes the running lights on the Kuczynski vessel were not illuminated. Kuc-

zynski and Channel maintain that their running lights were illuminated.

ski vessel, Millman and his passengers heard the collision between the McLaughlin and Kuczynski vessels. By all accounts, McLaughlin never saw the Kuczynski vessel and, in essence, ran over it from the rear with his vessel while traveling at 40 miles per hour. Plaintiffs suffered personal injuries—some quite severe—as a result of the collision.

### III.

Both plaintiffs and defendants engaged maritime experts to testify regarding the standards of care for safe powerboat operation. For their part, plaintiffs proffered David E. Cole as their expert. Mr. Cole is a retired officer of the United States Coast Guard and currently operates a marine consulting firm. He has opined that both McLaughlin and Millman were negligent in the operation of their respective vessels and that the negligence of both operators was a proximate cause of the collision. With respect to Millman, Mr. Cole focused on Millman's role as the operator of the lead boat upon whom McLaughlin was relying to pilot both vessels safely to their destination. According to Mr. Cole, Millman was traveling at an excessive speed and without due regard for the hazards posed by poor (and, at times, deceiving) visibility conditions while on a well-traveled artery for boat and shipping traffic. Mr. Cole has also opined that the "rule of special circumstances" required Millman to warn Channel and McLaughlin that a colli-

sion between their two vessels was imminent.[2]

Millman has moved for summary judgment. He contends that, as the operator of a "non-contact" vessel, he owed no duty of care to the plaintiffs. He was not obliged to operate his vessel at a particular speed or in a particular manner because his vessel did not collide with the plaintiffs' vessel. Moreover, he was under no obligation to control, nor was he otherwise responsible for, the conduct of McLaughlin. And, finally, he contends that Mr. Cole's effort to create a duty by invoking the catch-all "special circumstances rule" misses the mark because the rule only applies when an operator's compliance with the other rules of the road would place another vessel in peril. No such allegation has been made here. Because he owed no duty to the plaintiffs, Millman contends he is entitled to summary judgment as a matter of law.

### IV.

When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of fact exist.[3] If, after viewing the record in a light most favorable to the non-moving party, the Court finds that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law, then summary judgment will be granted.[4] Summary judg-

2. The parties acknowledge that the so-called "rules of the road" as adopted by the United States Coast Guard set the standards of care, or standards of seamanship, for operators of powerboats on navigable waters. *See* Del. Code Ann. tit. 21, § 2122 (1997). The "rule of special circumstances" is codified as Rule 2 of the Inland Navigational Rules, 33 U.S.C. §§ 2001–2073 (2003) and provides, in pertinent part: "Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any

neglect to comply with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seaman, *or by the special circumstances of the case."* (emphasis supplied)

3. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.,* 312 A.2d 322, 325 (Del.Super.Ct.1973).

4. *Id.*

ment will not be granted, however, if the record indicates that a material fact is in dispute, or if judgment as a matter of law is not appropriate.[5]

## V.

The plaintiffs' showcase claim against Millman sounds in negligence, and Millman's motion for summary judgment takes aim at the heart of the negligence cause of action. He has not challenged the more fact-intensive elements of the claim— breach of duty or proximate cause; instead, he has called the threshold legal question of whether he owed any duty of care to the plaintiffs upon which a claim of negligence may be stationed.[6] "Whether a duty exists is entirely a question of law to be determined ... by the court."[7]

In their submissions, both parties have linked a violation of the rules of the road inextricably to the question of whether a duty exists: plaintiffs argue that any one of various alleged violations of the rules of the road demonstrate the existence of a duty; Millman argues that no duty exists because no violation of the rules of the road occurred. Both parties have missed the relevant inquiry. The rules of the road may help to define the applicable standard of care. They do not, however, establish the existence of a duty of care in the first instance. Rather, *vel non* a duty of care exists depends upon the nature of the relationship between the parties.

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person...."[8] In their hornbook, Professors Prosser and Keeton admonish their readers to resist the urge to blend the concepts of duty and standard of conduct when addressing the threshold legal issue of whether one party may be held legally accountable to another. "It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation."[9] Delaware courts have recognized the distinction as well.[10]

**5.** *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

**6.** *See New Haverford P'ship v. Stroot,* 772 A.2d 792, 798 (Del.2001)("To state a claim for negligence one must allege that defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury.").

**7.** *Shively v. Ken Crest Centers for Exceptional Persons,* 2001 WL 209910, at *5, 2001 Del.Super. LEXIS 58, at *17 (citations omitted).

**8.** 57A Am.Jur. 2d *Negligence* § 89 (1989). *See also Atlantic & Pacific Railroad Co. v. Laird,* 164 U.S. 393, 399, 17 S.Ct. 120, 41 L.Ed. 485 (1896)(tort notions of duty arise from relationship between plaintiff and defendant).

**9.** W. Page Keeton, Prosser & Keeton on Torts, § 53 (5th ed.1984). *See also Samhoun v.*

*Greenfield Constr. Co., Inc.,* 163 Mich.App. 34, 413 N.W.2d 723, 726 (1987)("In Prosser's terms, ... [i]t is apparent that resolution of the 'duty' issue determines the existence and not the nature or extent of the actor's obligation. Although somewhat interrelated, those latter concepts are more properly considered in the evaluation of the actor's conduct in relation to the general and specific standards of care.") (citations omitted).

**10.** *See Naidu v. Laird,* 539 A.2d 1064, 1070 (Del.1988)(Citing Prosser & Keeton, the court noted "[t]he ultimate question of whether 'such a relationship exists between the parties that the community will impose a legal obligation upon one for the benefit of the other' is an issue for the court."); *O'Connor v. The Diamond State Telephone Co.,* 503 A.2d 661, 663 (Del.Super.Ct.1985)("Duty depends, in part, on the legal relationship between the parties.").

Although questioned in certain contexts, in cases where the defendant's alleged negligence arises from an "affirmative action such as driving an automobile [or operating a powerboat]," Professors Prosser and Keeton endorse Lord Esher's definition of "duty" in *Heaven v. Pender:* [11]

> Whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger. [12]

This explanation of duty, which incorporates the notion of foreseeability, comports with Delaware's focus on foreseeable consequences [13] when determining whether a duty exists. [14]

▉ Applied here, Lord Esher's definition of duty clearly reveals that Millman owed a duty of care to the plaintiffs. Millman chose to operate his powerboat at night on a public waterway where he knew, or should have known, that he would encounter other vessels, i.e., that he would "by circumstances [be] placed in such a position with regard to another ...," i.e., other boaters. He also knew, or should have known, that if "he did not use ordinary care and skill in his own conduct ... he [c]ould cause ... injury to the person or property" of other boaters. Such circumstances present the classic scenario where the law will impose a duty of care to operate a vehicle or vessel with due care for the other vehicles or vessels in operation at the same time and location. [15]

---

11. Q.B.D. 503, 509 (1893).

12. Keeton, *supra* note 9, at § 53.

13. The Court notes that foreseeability, at least in the context of the causation prong of the plaintiff's *prima facie* case, may not be implicated by the applicable principles of admiralty law. *See Duphily v. Del. Elec. Co-op., Inc.* 662 A.2d 821, 833 (Del.1995)(noting that foreseeability is a component of the causation inquiry). Specifically, under the so-called "Pennsylvania presumption," the plaintiffs may be able to discharge their *prima facie* burden by proving only a violation of the rules of the road at which time the burden would shift to the defendants to establish that the violation of the rules did not cause, and "could not have contributed" to the collision. *The Pennsylvania,* 86 U.S. 125, 19 Wall. 125, 22 L.Ed. 148 (1874). The Court need not determine whether the Pennsylvania presumption applies here or, if it does apply, how it would affect the causation element of plaintiffs' negligence case. For now, the Court will focus on foreseeability only as it relates to the duty analysis.

14. *See, e.g., Brower v. Metal Indus., Inc.,* 719 A.2d 941, 945 (Del.1998)(finding that manufacturer of window screen owed no duty to consumer who used screen in unforeseeable manner).

15. *See, e.g., Collette v. Tolleson Unified School Dist., No. 214,* 203 Ariz. 359, 54 P.3d 828, 831 (App.2002)(stating that the relationship among motorists "begins with their joint status as motorists, which places them within foreseeable risk of negligent driving by other motorists. The general duty of reasonable care arises from this relationship and becomes fixed when it is breached and causes damage."); *Rudolph v. Arizona B.A.S.S. Federation,* 182 Ariz. 622, 898 P.2d 1000, 1003 (App.1995)(recognizing that relationship of boaters on closed lake gives rise to a duty of care among the boaters owing to each other); *Prince v. Thomas,* 25 F.Supp.2d 1045, 1048 (N.D.Cal.1997)(concluding that relationship of boaters at an anchorage gives rise to duty of care); *The Velma Brooks; The Mundolphin,* 3 F.Supp. 766, 772 (D.Md.1933)("[W]hen two boats are approaching each other, each is charged with the active affirmative duty of exercising all possible care to avoid a collision, and the failure of one to do so does not excuse the failure of the other.").

■ The fact that Millman was a stranger to the plaintiffs does not alter the analysis. The duty of care among operators of vessels on a navigable waterway "exists even though the operator does not know any of the other [operators] or passengers, and the only connection is that they are using the same [waters]."[16] And while Millman emphasizes that he managed to avoid a collision with the plaintiffs, he loses sight of the fact that it is not the outcome of the encounter which creates the duty. The duty derives from the relationship between the parties and the foreseeable risk of harm that is implicated by the relationship. The fact that Millman passed the Kuczynski vessel without incident may ultimately prove to exonerate him from the charge of negligence; it will not, however, relieve him of the duty of care he owed to the plaintiffs and to all other vessels operating on the C & D Canal the evening of July 17.

■ "Courts [typically will] take a broad view of the class of risks and the class of victims that are foreseeable for the purpose of finding a duty."[17] A "broad view" is not necessary in this instance, however. It is reasonable to impose a duty of care among the operators of powerboats traveling in close proximity to one another on a navigable waterway. The standards by which this duty may be discharged will be defined both by common law concepts of due care and, perhaps, by the rules of the road if the jury finds them to be applicable.[18] To the extent the jury finds a violation of the rules of the road, the Court will instruct them that this finding gives rise to negligence *per se*.[19] All of these issues will be addressed at trial. But, for purposes of addressing the motion *sub judice*, the debate over whether Millman violated a rule of the road, including the special circumstances rule, does not add value to the analysis of whether Millman owed a duty to plaintiffs. Mr. Cole's opinions, likewise, have no place in the Court's consideration of this legal issue.[20] Now that the Court has determined that Millman owed a duty of care to plaintiffs, a jury will decide whether the rules are implicated by the facts, whether any of them have been violated and what weight, if any, to give to Mr. Cole's testimony with respect to these issues.[21]

The unique circumstances of this collision, and the resulting allegations of the plaintiffs, require the Court to make one final observation. Millman has argued that he owed no duty to the plaintiffs to control the conduct of McLaughlin. As a general proposition, the Court agrees that Millman has correctly stated the law.[22] But, in this case, plaintiffs have not argued that Millman failed to control McLaughlin. Rather, plaintiffs argue: (i) that Millman

---

**16.** *Zanine v. Gallagher,* 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985)(addressing duty of motorists on public roadway).

**17.** *Rudolph,* 898 P.2d at 1002.

**18.** *See Stroot,* 772 A.2d at 798 (noting that the standard of care may be defined by both common law principles and by statute).

**19.** *Id. See also Rich v. Dean,* 261 A.2d 522, 524 (Del.1969)(concluding that the violation of motor vehicle rules of the road constitutes negligence *per se).*

**20.** *See Itek Corp. v. Chicago Aerial Indus., Inc.,* 274 A.2d 141, 143 (Del.1971)(stating that an expert may not testify as to whether or not a legal duty exists; such testimony "impinges upon the domain of the trial judge.").

**21.** *See Wilmington Country Club v. Cowee,* 747 A.2d 1087, 1095 (Del.2000)(noting that negligence is a question of fact for the jury to decide).

**22.** *See Harden v. Allstate Ins. Co.,* 883 F.Supp. 963, 971 (D.Del.1995)(holding generally that a party owes no duty to control the conduct of a third person).

breached his duty of care to them by failing to warn them of an impending collision; and (ii) that Millman's role as the captain of the "lead vessel" vis a vis McLaughlin, and his duty to plaintiffs to exercise due care, combined to create a situation where the manner in which Millman operated his vessel was a proximate cause of the collision between the McLaughlin and Kuczynski vessels. Clearly, with respect to the first claim, McLaughlin's conduct is not at issue and the duty analysis is not clouded by his involvement. With respect to the second claim, however, the duty analysis requires further explanation.

■ Millman's argument draws support from RESTATEMENT (SECOND) OF TORTS § 315 (1965)("Section 315") which provides, in part:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right of protection.

In this instance, plaintiffs have not alleged, and the record would not support, the existence of a "special relation" between Millman and McLaughlin or Millman and the plaintiffs such as would justify the imposition of a duty upon Millman to control the conduct of McLaughlin. But the inquiry does not end here. Section 315 can be traced to the common law recognition that, in limited circumstances, the law should impose a duty to act when a party otherwise may be inclined not to act.[23] In other words, Section 315 addresses circumstances of "inaction" or "non-feasance" as opposed to circumstances of "action" or "misfeasance."[24] "[T]his section of the Restatement does not, [however], address those situations where the individual in question is a direct participant in the wrongful conduct that harms another."[25] Such is the case here.

■ To the extent the jury finds that Millman agreed to lead McLaughlin back to port, and that he then set the speed of the two vessels in excess of that which was reasonable, a jury could conclude that Millman acted in concert with, or substantially assisted, McLaughlin in negligently causing the collision with the Kuczynski vessel.[26] Section 876 has been adopted in Delaware in instances where the defendant did not directly cause harm, but rather acted with another to do so.[27] These cases follow the now well-settled rule that "one will be held liable for the injuries that flow

---

23. *See* RESTATEMENT (SECOND) OF TORTS § 314, comment c. (1965).

24. *Id.*

25. *Sanke v. Bechina*, 216 Ill.App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212, 1214 (1991).

26. *See* RESTATEMENT (SECOND) OF TORTS § 876 (1965) ("Section 876"), which provides:
For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

27. *See, e.g. Bierczynski v. Rogers*, 239 A.2d 218, 221 (Del.1968)(imposing a duty upon the driver of a non-contact vehicle involved in a drag race with vehicle that struck the plaintiff); *Pipher v. Burr*, 1998 WL 110135, at *9, 1998 Del.Super. LEXIS 26, at *28 (in connec-

from his participation in a joint concerted tortious activity, if that activity was the proximate cause of injury."[28]

Here, the Court has determined that Millman "operated his [vessel] in such a fashion that a trier of fact could conclude that [the negligent actions of the vessel he was leading] were foreseeable. The fact-finder could conclude that [Millman] was aware, or should have been aware, of the chaos he left in his wake and the repercussions his actions would have. On the other hand, the trier of fact could find that [Millman] was sufficiently removed from the accident in both time and space to relieve him of responsibility for [plaintiffs'] injuries."[29] Such factual determinations are properly reserved for trial.[30]

## VI.

Based on the foregoing, the Court is satisfied that the relationship between

Millman and the plaintiffs—operators and passengers of two vessels traveling on the same navigable waterway—was such that a duty of care must be imposed upon the operators of both vessels. The standards by which this duty will be measured, whether the duty was breached, and whether any such breach caused the collision, all are issues of fact for the jury to decide at trial. Millman's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

tion with an automobile collision, court imposed a duty upon supplier of alcohol to minor who knew that the minor would operate motor vehicle after consuming the alcohol); *Rutledge v. Wood*, 2003 WL 139758, at *3–4, 2003 Del.Super. LEXIS 12, at *9 (imposing duty upon operator of a non-contact vehicle who had been driving inappropriately with the defendant-contact vehicle following close behind).

28. *Clausen v. Carroll*, 291 Ill.App.3d 530, 225 Ill.Dec. 692, 684 N.E.2d 167, 171 (1997). *See also Lemons v. Kelly*, 239 Or. 354, 397 P.2d 784, 787 (1964)("One who does participate in

setting in motion such hazardous conduct cannot thereafter turn his liability off like a lightswitch [sic].").

29. *Rutledge*, 2003 WL 139758, at *3–4, 2003 Del.Super. LEXIS 12, at *9–10.

30. *See Wilmington Country Club*, 747 A.2d at 1095 (breach of duty question of fact for the jury); *Lupinacci v. Medical Center of Delaware*, 805 A.2d 867, 868 (Del.2002)("The issue of proximate cause is generally a question of fact for the jury.").