# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KELSEY MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N20C-01-254 MAA |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MASON, NATALIE | ) | |
| MASON, LAUREN RIZZO, JACOB | ) | |
| LOPEZ, and BRANDYWINE | ) | |
| VALLEY SPCA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: September 9, 2020
Decided: December 16, 2020

*Upon Defendant Brandywine Valley SPCA's Motion to Dismiss:* **GRANTED
(with prejudice)** with respect to Murray's § 315 and § 323 claims, and
**GRANTED (without prejudice)** with respect to Murray's § 324A claim.

## OPINION

Frederick S. Freibott, Esquire and Dennis A. Mason, II, Esquire (Argued), of THE FREIBOTT LAW FIRM, Wilmington, Delaware, Attorneys for Plaintiff.

Sarah B. Cole, Esquire (Argued), of MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C. Wilmington, Delaware, Attorney for Defendant Brandywine Valley SPCA.

**Adams, J.**

## I.  INTRODUCTION

This case presents an issue of first impression: whether a nonprofit animal shelter can be held liable in negligence for a dog attack that occurred in a private residence months after an animal was released from its care to a person with no affiliation with the organization.  Under Delaware law, to be liable in tort for negligence, the Court must determine that a defendant owed a duty to plaintiff as a matter of law.  Absent such duty, a defendant cannot be held liable for negligence, no matter how harmful or reprehensible their conduct may be.

Here, the Court finds that as pleaded, plaintiff's Complaint does not establish any actionable negligence claims.  Plaintiff Kelsey Murray has not established that Brandywine Valley SPCA ("BVSPCA") owed her a duty of care to protect her from a dog attack in an acquaintance's home.  To the extent the claims in Murray's Complaint are those of nonfeasance, the viability of which depend upon the existence of a "special relationship," BVSPCA's motion to dismiss is **GRANTED with prejudice**.  Likewise, the motion to dismiss as to any claims that relate to an undertaking under the Restatement (Second) of Torts § 323 is **GRANTED with prejudice**.  The motion to dismiss as to an undertaking under the Restatement (Second) of Torts § 324 claim, however, is **GRANTED without prejudice**, to reflect that the Complaint, as pleaded, fails to state any claim of negligence but might, if further amended, state a claim under Restatement (Second) § 324A.

## II.  BACKGROUND

### A. Facts[1]

Plaintiff Kelsey Murray ("Murray") is a Delaware resident.[2]  On September 11, 2019, Murray was a guest at the home of co-defendants Natalie Mason and Lauren Rizzo ("Rizzo") in Wilmington, Delaware.[3]  The home is owned by co-defendant Michael Mason.  Around 11:30 p.m., Nitrous, a five-year old dog who was "owned, harbored and/or in the custody of" Natalie Mason, Rizzo, and fellow co-defendant Jacob Lopez ("Lopez"), severely attacked Murray while she was walking to the bathroom.[4]

Prior to the attack, Natalie Mason and Lopez lived with each other and were owners of Nitrous.[5]  During that time, they trained the dog to be aggressive toward people.[6]  In addition, in the months before September 11, Nitrous attacked and injured Lopez's friend or relative.[7]  Subsequently, Lopez took the dog to defendant

---

[1] The facts are drawn from the plaintiff's Complaint ("Compl."), and are presumed true for the purpose of evaluating defendant Brandywine Valley SPCA's motion to dismiss.

[2] Compl. at ¶ 1.

[3] *Id.* at ¶¶ 3, 7.

[4] *Id.* at ¶ 7.

[5] *Id.* at ¶ 8.

[6] *Id.*

[7] *Id.* at ¶ 7, 9.

BVSPCA, told them about the attack, and indicated that he was not able to control Nitrous.[8]

After Nitrous was confined and placed in the care of BVSPCA, Rizzo went to BVSPCA and reclaimed Nitrous.[9] She then brought the dog home to reside with herself and her roommate, co-defendant Natalie Mason.[10] Thereafter, both Rizzo and Natalie Mason claimed ownership of the dog.[11] BVSPCA failed to warn Rizzo or any others of Nitrous's dangerous propensities, despite BVSPCA's knowledge of the dog's "aggressive and vicious behavior toward people."[12] On September 11, 2019, Murray was attacked by Nitrous.

B. Procedural Posture

Murray filed her Complaint on January 30, 2020.[13] On March 23, 2020, BVSPCA filed its motion to dismiss ("the Motion") the Complaint.[14] The Court granted the stipulated briefing schedule on the Motion on April 8, 2020.[15] On April 17, 2020, Murray served a subpoena upon BVSPCA.[16] BVSPA filed a motion to

---

[8] Id.
[9] Id. at ¶¶ 10, 12.
[10] Id. at ¶ 10.
[11] Id.
[12] Id. at ¶ 12.
[13] Dkt. 1.
[14] Dkt. 29.
[15] Dkt. 33.
[16] See Dkt. 37. Murray served the subpoena on BVSPCA despite the fact that counsel had entered its appearance on behalf of BVSPCA on March 5, 2020. Murray also served a prior subpoena upon BVSPCA after filing her Complaint on January 31,

quash the subpoena and stay discovery (the "Motion to Quash") on April 30, 2020.[17]

The Court granted BVSPCA's Motion to Quash with amendments on May 13, 2020,

effectively staying discovery until Murray's motion to dismiss is resolved.[18]  The

Court heard oral argument on the Motion on September 9, 2020.[19]

## III.  STANDARDS

### A. Rule 12(b)(6)

The Court's function in considering a motion to dismiss is to read the

complaint generously, accept all well-pleaded allegations as true, and construe them

in a light most favorable to the plaintiff.[20]  Under Superior Court Civil Rule 12(b)(6),

a motion to dismiss presents the question of "whether a plaintiff may recover under

any reasonably conceivable set of circumstances susceptible of proof under the

complaint."[21]  Dismissal is warranted only when "under no reasonable interpretation

of the facts alleged could the complaint state a claim for which relief might be

granted."[22]  The Court need not, however, accept conclusory allegations that lack

---

2020. *See* Dkt. 36; *see also* Pl.'s Answering Br., at 1 ("It should be noted that Defendant BVSPCA responded to Plaintiff's subpoena *duces tecum* on February 6, 2020 after Plaintiff's Complaint was filed and produced documents concerning the dog.").

[17] Dkt. 39.

[18] Dkt. 49.

[19] *See* Dkt. 93.

[20] *In re Tri–Star Pictures, Inc. Litig.,* 634 A.2d 319, 326 (Del. 1993) (citation omitted).

[21] *Browne v. Robb,* 583 A.2d 949, 950 (Del. 1990).

[22] *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004).

factual support, nor "accept every strained interpretation of the allegations proposed by the plaintiff."[23]

B. Rule 9(b)

When a complaint includes claims of negligence, the Court must also take into account Superior Court Civil Rule 9(b), which requires the plaintiff to plead allegations of negligence with particularity.[24] "The purpose of Rule 9(b) is one of fairness and notice."[25] Under the Rule, incorporating claims by reference is insufficient to cure allegations that are pleaded without particularity, as *all* claims of negligence must be pleaded with particularity.[26]

## IV. ANALYSIS

A. Materials Outside the Pleadings

The Court will not consider any materials outside of Murray's Complaint for purposes of deciding the Motion. "The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to

---

[23] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).
[24] Del. Super. Ct. Civ. R. 9(b); *see also Fox v. Fox*, 729 A.2d 825, 827 n.2 (Del. 1999).
[25] *Fox v. Fox*, at 827 n.2 (citing *Chesapeake and Potomac Tel. Co. of Maryland v. Chesapeake Utilities Corp.*, 436 A.2d 314, 338 (Del. 1981)).
[26] *See Wilson v. Urquhart*, 2010 WL 2683031, at *11 (Del. Super. July 6, 2010), *aff'd sub nom. Wilson v. Brown*, 19 A.3d 302 (Del. 2011) (finding that incorporating prior paragraphs of one claim by reference into another did not cure the latter for lack of particularity).

6

dismiss."[27]    A court will only consider materials outside the complaint in three limited instances: (1) when a document is integral to a claim and incorporated into a complaint; (2) when the document is not being relied upon to prove the truths of its contents; or (3) when the document is an adjudicative fact subject to judicial notice.[28] Whether a document is integral to a claim and incorporated into a complaint is largely a "facts-and-circumstances inquiry."[29]  Generally, a document is integral to the claim and incorporated into the complaint if it is the source for the facts as pleaded in the complaint.[30]

A *post hoc* attempt to clarify allegations in a complaint in response to a motion to dismiss "cannot be received as a supplement or amendment to the pleading itself."[31]   Murray's's answering brief contains facts outside of the complaint and arguments heavily buttressed by those facts.[32] At oral argument, both parties, but plaintiff in particular, likewise referred to and relied upon matters outside of the

---

[27] *Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 169; *see also Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).

[28] *In re Gardner Denver, Inc.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

[29] *Id.* at *3.

[30] *See Fortis Advisors LLC v. Allergan W.C. Holding Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019); *see also Robotti & Co., LLC v. Liddell*, 2010 WL 157474, at *6 (Del. Ch. Jan. 14, 2010).

[31] *Akrout v. Jarkoy*, 2018 WL 3361401, at *3 n.23 (Del. Ch. July 10, 2018), *reargument denied*, 2018 WL 4501174 (Del. Ch. Sept. 19, 2018); *see also Gerber v. EPE Hldgs., LLC*, 2013 WL 209658, at *4 n.38 (Del. Ch. Jan. 18, 2013) (noting that an answering brief in response to a motion to dismiss is not the appropriate vehicle for expanding claims).

[32] *See, e.g.*, Pl.'s Answering Br., at 1–3, 10, 14, 16, Exs. A-E.

pleadings.[33]  When plaintiff's counsel was asked if Murray wished to convert the motion to dismiss into a motion for summary judgment, counsel declined.[34]  The Court will not convert the motion to one for summary judgment, and instead will consider it as-styled under Rule 12.[35]  Because the facts outside of the Complaint introduced by Murray do not fit within any of the narrow exceptions as delineated above, to the extent either party relies on such materials, the Court will not consider them.[36]  Instead, the Court will focus solely on the four corners of the Complaint.

Though the Court will not consider materials extraneous to the Complaint when deciding the Motion, the Court must determine whether the additional facts "should be ignored altogether or whether some proper purpose may be served by

---

[33] *See, e.g.*, Mot. to Dismiss Hrg. Tr. (hereinafter, "Hrg. Tr.") at 17–21.

[34] Hrg. Tr. at 23.

[35] "Delaware courts follow the federal practice when determining whether the presentation of matters outside of the pleadings will convert a motion to dismiss to a motion for summary judgment." *Doe 30's Mother v. Bradley*, 58 A.3d 429, 444 (Del. Super. 2012).  "This practice allows the trial court full discretion to accept and consider extraneous submissions when adjudicating a motion to dismiss under Rule 12(b)(6), thereby requiring conversion of the motion, or to reject the extraneous submissions in order to preserve the motion to dismiss under Rule 12(b)(6)." *Id.*

[36] *See Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("[Plaintiff] improperly attempts to expand the scope of his complaint in his brief opposing the motion to dismiss ... At this stage of litigation, the Court is only permitted to consider the well-pleaded facts contained in the complaint and any documents incorporated by reference into that complaint. Briefs relating to a motion to dismiss [and, logically, oral argument regarding those briefs,] are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.").

taking notice of those facts."[37] The Court will consider the extraneous materials for the limited purpose of deciding whether to grant Murray leave to amend her Complaint.

For the reasons discussed below, the Court has determined that Murray has failed to state a claim of nonfeasance under Restatement (Second) of Torts ("Restatement (Second)") § 315, and that any amendment in which Murray might attempt to state such a claim would be futile. Likewise, Murray has failed to state a claim under § 323, and the claim, as pleaded, must be dismissed. The extraneous facts submitted by Murray, however, are such that she may be able to state a viable § 324A undertaking claim against BVSPCA upon further amendment of the Complaint. Leave to amend the Complaint as to this claim will be granted.

B. Negligence Claims under the Restatement (Second) of Torts

BVSPCA has moved to dismiss Murray's claims, arguing that none of the theories of negligence advanced against the organization hold water. Specifically, BVSPCA moves to dismiss for two primary reasons: (1) Murray has not pleaded facts to support an allegation that a "special relationship" existed that would constitute a duty of care under the Restatement (Second) § 315; and (2) even if BVSPCA undertook to render services to someone, thus creating a duty of care, the

_____

[37] *Doe 30's*, at 445.

9

undertaking did not trigger a duty owed by BVSPCA to Murray under §§ 323 or 324A.

### 1. Negligence Generally

To prevail on a claim of negligence, Murray must allege that: (1) BVSPCA owed her a duty of care; (2) that BVSPCA breached that duty; and (3) that BVSPCA's breach proximately caused Murray's injury.[38]  Common law duty is "essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person."[39]  BVSPCA has raised the threshold question of whether it owed a legal duty to Murray.  Whether such a duty is owed is a question of law to be determined by the Court.

### 2. Nonfeasance Claims under Restatement (Second) § 315

Delaware courts look to the Restatement (Second) of Torts to determine whether one party owes another a duty of care.[40]  The Restatement (Second) distinguishes between negligent acts ("malfeasance") and negligent omissions

---

[38] *Doe 30's*, at 447 (citing *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Georgia S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018)).

[39] *Kuczynski v. McLaughlin*, 835 A.2d 150, 153 (Del. Super. 2003) (citations omitted).

[40] *See Doe v. Bradley*, 2011 WL 290829, at *7 (Del. Super. Jan. 21, 2011) ("*Bradley I*").

10

("nonfeasance") for purposes of determining the nature of the duty owed.[41]  Anyone

who performs an affirmative act is under a duty to others to "exercise the care of a

reasonable man to protect them against an unreasonable risk of harm to them arising

out of the act."[42]  Conversely, one who "merely omits to act" generally has no duty

to do so, "unless there is a special relationship between the actor and the other which

gives rise to the duty," as defined by § 315(a) and (b) of the Restatement (Second).[43]

Murray has alleged a litany of failures[44] on the part of BVSPCA.  In essence,

she argues that BVSPCA failed to ascertain why Nitrous was placed in its care and

failed to perform due diligence regarding its circumstances, and that it failed to train

---

[41] *Id.* at \*5; *see also Riedel v. ICI Americas Inc.*, 968 A.2d 17, 22 (Del. 2009), *overruled on other grounds by Ramsey v. Georgia S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018). Section § 284 of the Restatement (Second) outlines the difference between these two concepts, noting that negligent conduct may be either:

> (a) an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another, or
> (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.

Restatement (Second) of Torts § 284 (Am. L. Inst. 1965). Restatement (Second) at § 302 further explores their differences: "A negligent act or omission may be one which involves an unreasonable risk of harm to another either through (a) the continuous operation of a force started or continued by the act or omission, or (b) the foreseeable action of the other, a third person, an animal, or a force of nature." *Id.* at § 302.

[42] *Bradley I*, at \*5 (citing Restatement (Second) of Torts § 302 cmt. a.).

[43] *Id.*

[44] *See* Compl. at ¶ 19(a)-(f).

11

or otherwise rehabilitate Nitrous, or warn others about Nitrous's disposition. Here, because Murray's negligence allegations sound in nonfeasance,[45] the Court must determine whether a special relationship exists under § 315.

### i. 315(a)

Section 315(a) notes that "[t]here is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the ***third person*** which imposes a duty upon the actor to control the third person's conduct."[46] It directs the Court to consider the relationship between BVSPCA (the "actor") and Natalie Mason, Lauren Rizzo, and Jacob Lopez[47] (the alleged dog owners at the time of the attack)[48] (the "third

---

[45] Murray argues that her claims sound in both nonfeasance and malfeasance. *See, e.g.*, Hrg. Tr. at 27, 34–35. Delaware courts have recognized that the barrier between these concepts is indistinct, and at times, confusing. *See, e.g.*, *Doe 30's*, at 447 n.43. Nevertheless, as pleaded, Murray's allegations against BVSPCA are most appropriately categorized as negligent omissions. To the extent Murray argues malfeasance has been pleaded, she has not done so with particularity, a prerequisite for negligence claims. *See* discussion *supra* Section III.B.

[46] Restatement (Second) Torts § 315(a) (emphasis added).

[47] In her Complaint, Murray is inconsistent as to the alleged ownership of Nitrous. *See* Compl. at ¶ 7 (Murray alleges that Nitrous was "owned, harbored and/or in the custody of" Natalie Mason, Lauren Rizzo, and Jacob Lopez at the time of the attack.); ¶ 10 (Murray alleges that Natalie Mason and Lauren Rizzo claimed ownership of the dog). The Court, solely for the purpose of deciding this Motion, accepts as true that Natalie Mason, Rizzo, and Lopez were the owners of Nitrous at the time of the attack.

[48] Here, the "third person" as contemplated under the Restatement (Second) would be the dog owners, as they are the ones responsible for the conduct of Nitrous under Delaware law. *See, e.g.*, *Russo v. Zeigler*, 67 A.3d 536, 538–540 (Del. Super. 2013) (observing that under Delaware law, dog owners are liable for the actions of their

12

person"), with reference to Restatement (Second) §§ 316–319, "each of which define the only relationships that will trigger a duty to act for the protection of another."[49] Nowhere in her Complaint does Murray allege that BVSPCA had a special relationship in any of these contexts. Consequently, Murray has failed to state a claim against BVSPCA under Restatement (Second) § 315(a).

ii. 315(b)

Section 315(b) notes that "[t]here is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless … (b) a special relation exists between the actor and the other which gives to the ***other*** a right to protection."[50] Section 315(b) directs the Court to consider the relationship between the BVSPCA ("the actor") and Murray ("the other") as further defined in §§ 314A and 320. Section 314A addresses several "special relationships" which do not apply to this case.[51] Similarly, Restatement Second § 320 does not apply to this

---

domesticated dogs); *see also* 16 *Del. C.* § 3053F ("The *owner* of a dog is liable in damages for any injury, death, or loss to person or property that is caused by such dog") (emphasis added).

[49] *Doe 30's*, at 449 (citing Restatement (Second) Torts § 315 cmt. c). These sections relate to the following scenarios: § 316 ("Duty of Parent to Control Conduct of Child"); § 317 ("Duty of Master to Control Conduct of Servant"); § 318 ("Duty of Possessor of Land or Chattels to Control Conduct of Licensee"); and § 319 ("Duty of Those in Charge of Person Having Dangerous Propensities").

[50] Restatement (Second) of Torts § 315 (emphasis added).

[51] *See* Restatement (Second) Torts § 314A (listing: common carrier/passenger, innkeeper/guest, possessor of land/invited public, and one who takes custody of another).

case because it defines the "Duty of [a] Person Having Custody of Another to Control Conduct of Third Persons," and Murray has not alleged, nor can she allege, that BVSPCA ever had "custody of" Murray.[52]

As noted in *Doe 30's*, however, a "*Caveat*"[53] to § 314A "clearly allows the Court, within its discretion, to envisage 'special relationships' outside the bounds of the Restatement Second and to consider whether such relationships give rise to a legal duty that may be imposed upon [BVSPCA] to act for the protection of [Murray]."[54] Although not clearly pleaded in the Complaint, to the extent that Murray alleges that BVSPCA maintained a special relationship with her by virtue of her being a member of the public, the Court is satisfied that this circumstance does not give rise to the sort of special relationship that is contemplated by Restatement Second §§ 314A or 315(b).[55] Murray provides no support under Delaware case law or the Restatement Second to support this proposition. Further, none of the roles of BVSPCA put it in a relationship of "dependence or mutual dependence" with Murray as is necessary to trigger a duty to act for her protection.[56]

---

[52] *See* Restatement (Second) Torts § 320.
[53] Restatement (Second) Torts § 314A caveat.
[54] *Doe 30's*, at 450–51 (citing Restatement (Second) Torts § 314A caveat; Restatement (Second) Torts § 314A cmt. b).
[55] *See Doe 30's*, at 451.
[56] Restatement (Second) Torts § 314A cmt. b.

Murray's § 315 claims against BVSPCA as pleaded are not viable as a matter of law and cannot be revived by amendment. They must be dismissed with prejudice.

### 3. Undertaking Claim under § 323

The Restatement Second § 323 addresses the duty owed "by one who assumes direct responsibility for the safety of another through the rendering of services in the area of protection."[57] Here, Murray has not alleged, and cannot allege, that BVSPCA directly undertook to provide services to her for the protection of her person or things. Further, "Section 323 only addresses the duty of care to a person physically on the property of the entity owing the duty."[58] Murray likewise has not alleged any facts suggesting that she was ever on the property of BVSPCA at any time.

Murray's § 323 claim against BVSPCA, as pleaded is not viable as a matter of law and cannot be revived by amendment. It must be dismissed with prejudice.

### 4. Undertaking Claim under § 324A

The parties also dispute whether Murray has adequately alleged an undertaking under Restatement (Second) § 324A. As a threshold matter, Murray

---

[57] *Furek v. Univ. of Delaware,* 594 A.2d 506, 519 (Del. 1991); *see also* Restatement (Second) Torts § 323 ("One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.").
[58] *Rogers v. Christina Sch. Dist.*, 73 A.3d 1, 9 (Del. 2013).

must first establish that Brandywine Valley SPCA has "undertake[n]" to render services to "another" to invoke § 324A.[59] As noted in *Doe 30's*, unlike the § 323 undertaking, initiated for "the sole protection of the person to whom the undertaking is made," the § 324A undertaking contemplates "the protection of a third person as well."[60]

As pleaded, Murray's Complaint fails to allege the threshold issue[61] of whether a § 324A undertaking occurred. The Court, however, has been presented with extraneous materials indicating that facts may exist to support a § 324A undertaking claim against BVSPCA. Even though such a claim is "fraught with potential shortcomings,"[62] the Court will grant leave to Murray to amend her Complaint on this claim alone.

## V.    CONCLUSION

Based on the foregoing, BVSPCA's motion to dismiss is **GRANTED (with prejudice)** with respect to Murray's § 315 and § 323 claims, and **GRANTED**

---

[59] *Doe 30's*, at 457 (citing Restatement (Second) § 324A).

[60] *Doe 30's*, at 457 (internal quotation omitted).

[61] Establishing that an undertaking occurred is the first step in successfully alleging an undertaking under § 324A. *Patton v. Simone*, 626 A.2d 844, 849 (Del. Super. 1992) (citing Restatement (Second) of Torts § 324A). A plaintiff must also allege that one of the scenarios under § 324A(a)-(c) occurred as well.

[62] *Enigma Info. Retrieval Sys., Inc. v. Radian*, 2005 WL 445568, at *3 (Del. Super. Feb. 23, 2005) (dismissing plaintiff's claims without prejudice and giving leave to amend based on facts suggesting a different potential claim existed "albeit fraught with potential shortcomings").

16

**(without prejudice)**, with respect to Murray's § 324A claim.  Leave is given to Murray to amend her Complaint as to the § 324A claim, within thirty (30) days of this order.

      **IT IS SO ORDERED.**

_Meghan A. A_

Meghan A. Adams, Judge
