# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ATM SHAFIQUL KHALID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0443-KSJM |
| | ) | |
| ELON R. MUSK, X CORP., | ) | |
| X HOLDINGS I, INC., X | ) | |
| HOLDINGS II, INC., and | ) | |
| TWITTER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: May 23, 2025
Date Decided: July 18, 2025

ATM Shafiqul Khalid, *Self-Represented Plaintiff*.

Catherine A. Gaul, Randall J. Teti, ASHBY & GEDDES, Wilmington, Delaware; Zacharia M. Chibane, New York, New York; *Counsel for Defendants Elon R. Musk, X Corp., and X Holdings Corp.*

**McCORMICK, C.**

The plaintiff is a retail investor. After Elon Musk announced that he had entered an agreement to acquire Twitter, Inc. for $54.20 per share, the plaintiff acquired approximately $7.4 million in Twitter stock below the per share price. After Musk announced his intent to terminate the merger agreement, the plaintiff sold his shares at a loss of around $1.88 million. Musk later thought better of the deal and closed the merger. Representing himself, the plaintiff sued Musk and entities affiliated with Musk that signed the merger agreement. Hoping to recoup the $1.88 million, the plaintiff asserts a mix of eleven tort, fiduciary, and contractual claims against the defendants. The defendants have moved to dismiss. Musk argues that this court lacks personal jurisdiction over him in connection with the plaintiff's claims, and he is right. This decision grants Musk's motion to dismiss for lack of personal jurisdiction. The other defendants have moved to dismiss the complaint for failure to state a claim, and their motion too prevails. Despite the plaintiff's many interesting arguments, compelling narrative, and clear economic loss, the plaintiff's claims fail for a host of legal reasons.

## I. FACTUAL BACKGROUND

The facts are drawn from the Verified Complaint (the "Complaint") and the documents it incorporates by reference.[1]

### A. The Merger Litigation

In early 2022, Defendant Elon Musk and his affiliates—Defendant X Holdings I, Inc. ("Parent") and X Holdings II, Inc. ("Merger Sub")—agreed to acquire Twitter

---

[1] C.A. No. 2024-0443-KSJM, Docket ("Dkt.") 1 ("Compl.").

for $54.20 per share (the "Merger"). The parties executed an Agreement and Plan of Merger on April 25, 2022 (the "Merger Agreement").

Plaintiff ATM Shafiqul Khalid acquired 149,500 shares of Twitter around April 25 or 26, 2022, at an average price of $49.46, for a total purchase of $7,393,555.70.

Beginning in May 2022, Musk made public statements suggesting his intent to terminate the Merger Agreement, including a tweet stating that the Merger was "temporarily on hold."[2] Musk then caused the buyers to send a Notice of Termination to the SEC on July 8, 2022 (the "Termination Letter"). The Termination Letter gave bases for Musk's termination.

In response to the Termination Letter, around July 11, 2022, Plaintiff sold his Twitter shares at an average price of $36.90, for $5,517,113.14. This sale represented a loss of $1,876,442.56.

Twitter filed suit against Musk and his affiliates in this court on July 12, 2022. Twitter sought specific performance of the Merger Agreement (the "Merger Litigation").[3] By October 3, 2022, the deal was back on. On October 27, 2022, the Merger closed, and all parties to the Merger Litigation filed a stipulation and proposed order voluntarily dismissing the litigation.[4]

---

[2] Elon Musk (@elonmusk), X (f/k/a Twitter) (May 13, 2022, at 5:44 a.m.), https://x.com/elonmusk/status/1525049369552048129?s=46 (reproduced at Compl. ¶ 21).

[3] *Twitter, Inc. v. Elon R. Musk, et al.*, C.A. No. 2022-0613-KSJM (Del. Ch. dismissed Nov. 15, 2022) (Merger Litig.).

[4] Merger Litig. Dkts. 729, 741.

Plaintiff twice moved to intervene in the Merger Litigation. On October 11, 2022, Plaintiff filed a motion for permissive joinder to be included as a plaintiff in the Merger Litigation, claiming breach of the Merger Agreement and seeking an order awarding him 149,500 Twitter shares.[5] Plaintiff again moved to intervene on October 28, 2022, after the Merger closed and the parties voluntarily dismissed the Merger Litigation.[6] The court denied both of Plaintiff's motions to intervene on November 15, 2022.[7] The Delaware Supreme Court affirmed on June 7, 2023.[8]

On March 15, 2023, Twitter merged with and into Defendant X Corp. (with Musk, Parent, and Merger Sub, "Defendants"). Twitter ceased to exist, and its assets and liabilities passed to X Corp., its successor in interest.

## B. The Stockholder Litigation

Stockholder litigation proceeded in this court in parallel to the Merger Litigation. In *Crispo v. Musk*, a Twitter stockholder brought claims on behalf of a putative class of Twitter stockholders. The plaintiff asserted claims for breach of the Merger Agreement and breach of fiduciary duties against the buyers—Musk, Parent, and Merger Sub.[9] This court dismissed most of Crispo's complaint, holding that the plaintiff failed to adequately allege Musk controlled Twitter before the Merger and

---

[5] *See* Merger Litig. Dkt. 723.

[6] *See* Merger Litig. Dkt. 728.

[7] *See* Merger Litig. Dkt. 744.

[8] *See Khalid v. Twitter, Inc.*, 299 A.3d 2 (Del. 2023).

[9] *See Crispo v. Musk*, C.A. No. 2022-0666-KSJM, Dkt. 1 (Crispo Compl.), at 1, ¶¶ 72–87.

lacked standing to seek specific performance of the Merger Agreement.[10] The court later rejected Crispo's counsel's motion for mootness fees because Crispo's claims were not meritorious when filed, either because he lacked standing to pursue a claim for lost-premium damages under the Merger Agreement or because those rights had not yet vested when he filed suit.[11]

### C. This Litigation

Plaintiff filed this action on April 25, 2024.[12] He asserts eleven causes of action directly against Defendants: Count I for Breach of Contract; Count II for "Tortious Breach of Duty of Good Faith and Fair Dealing"; Count III for Promissory Estoppel; Count IV for Aiding and Abetting Breach of Fiduciary Duty; Count V for Breach of Fiduciary Duty; Count VI for Declaratory and Injunctive Relief; Count VII for Unjust Enrichment; Count VIII for Violation of Delaware Unlawful Trade Practices; Count IX for Common Law Fraud; Count X for "Misrepresentation"; and Count XI for "Negligent Performance."

On May 23, 2024, Defendants moved to dismiss the Complaint under Court of Chancery Rules 12(b)(2) and 12(b)(6).[13] The parties fully briefed the motion, and the court heard oral argument on January 27, 2025.[14] Following oral argument, Plaintiff

---

[10] *Crispo v. Musk*, 2022 WL 6693660, at *11, *15–16 (Del. Ch. Oct. 11, 2022) ("*Crispo Dismissal Decision*").

[11] *Crispo v. Musk*, 304 A.3d 567 (Del. Ch. 2023) ("*Crispo Mootness Decision*").

[12] Dkt. 1.

[13] Dkt. 11.

[14] Dkt. 26.

4

supplemented his briefing twice,[15] and Defendants responded each time.[16] The last submission was May 23, 2025.[17]

## II. LEGAL ANALYSIS

Musk has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. Defendants have moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

### A. Personal Jurisdiction

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[18] "If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction, and 'the record is construed in the light most favorable to the plaintiff.'"[19]

Delaware courts resolve questions of personal jurisdiction using a two-step analysis.[20] First, the court must "determine that service of process is authorized by

---

[15] Dkts. 27, 33.

[16] Dkts. 30, 34.

[17] Dkt. 34.

[18] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007) (citing *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318 (Del. Ch. 2003)).

[19] *Id.* (first citing *Benerofe v. Cha*, 1996 WL 535405, at *3 (Del. Ch. Sept. 12, 1996) and then quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

[20] *Id.*

statute[.]"[21]    Second, the defendant must have certain minimum contacts with Delaware such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."[22]

Plaintiff argues that the court has jurisdiction over Musk under Delaware's long-arm statute, 10 *Del. C.* § 3104(c)(1).[23]   Under Section 3104(c)(1), a Delaware court may exercise jurisdiction over a non-resident that "[t]ransacts any business or performs any character of work or service in the State[.]"[24]  "Where a party commits to the jurisdiction of a particular court or forum by contract, such as through a forum selection clause, a 'minimum contacts' analysis is not required as it should clearly anticipate being required to litigate in that forum."[25]

Plaintiff argues that Musk transacted business in Delaware by entering into the Merger Agreement and consenting to jurisdiction under the forum selection clause of the Merger Agreement.[26]  An express consent to jurisdiction satisfies the requirements of due process and typically resolves the statutory analysis.[27]  Musk responds that he is only a party to limited provisions of the Merger Agreement not

---

[21] *Id.*

[22] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[23] Compl. ¶ 3.

[24] 10 *Del. C.* § 3104(c)(1).

[25] *Eagle Force Hldgs. LLC v. Campbell,* 187 A.3d 1209, 1228 (Del. 2018) (internal citations omitted).

[26] Dkt. 19 (Pl.'s Answering Br.) at 66–69; *see also* Compl., Ex. 1 (Merger Agr.) § 9.10.

[27] *See Neurvana Med. LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019).

implicated by this lawsuit.[28]  Neither his transaction of business through the Merger Agreement nor his consent to jurisdiction, therefore, apply to Plaintiff's claims.

Musk's arguments require the court to examine Plaintiff's contract claims found in Counts I, II, and VI of the Complaint.  In Count I, Plaintiff claims that Defendants breached the express provisions of the Merger Agreement.  In Count II, Plaintiff claims that Defendants breached the covenant of good faith and fair dealing implied in the Merger Agreement.  Plaintiff's theory as to both Counts is that Musk unilaterally put the Merger Agreement on hold or terminated it when he falsely raised issues in the Termination Letter despite waiving diligence under the Merger Agreement.[29]  Plaintiff seeks his pro rata portion of the termination fee.[30]

In Count VI, Plaintiff seeks declaratory and injunctive relief based on Musk's purported breaches of the Merger Agreement.  He asks the court to order Defendants to issue "lost shares at the price [he] was forced to sell and make those shares part of the merger transaction," and enter a declaration that "those 149,500 shares [are] lost or destroyed certificates."[31]

Plaintiff was not a party to the Merger Agreement.  He therefore must show the parties to the contract intended for him to have third-party beneficiary standing to assert his contract claims.[32]  To allege standing as a third-party beneficiary, a

---

[28] Dkt. 17 (Defs.' Opening Br.) at 55; Dkt. 20 (Defs.' Reply Br.) at 29–31.

[29] Compl. ¶¶ 41, 45.

[30] *Id.*, Prayer for Relief ¶ E.

[31] *Id.* ¶ 69.

[32] *See* Merger Agr. at 1 ("THIS AGREEMENT . . . is made by and among Twitter, Inc. . . . X Holdings I, Inc. . . . . X Holdings II, Inc. . . . and, solely for purposes of Sections

plaintiff must plead that: "(i) the contracting parties . . . intended that the third party beneficiary benefit from the contract, (ii) the benefit [was] intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party [was] a material part of the parties' purpose in entering into the contract."[33]

As this court explained in the *Crispo* litigation, Delaware courts are hesitant to confer third-party beneficiary status to stockholders under corporate contracts for a mix of doctrinal, practical, and policy reasons.[34] Defendants advance claim preclusion arguments based on the *Crispo* decisions. For the purpose of that argument, the parties dispute whether Plaintiff was in privity with the prior stockholders for purposes of the claim preclusion doctrine. But the court does not

---

5.4, 6.2(d), 6.3, 6.8, 6.10, 6.11, 6.12 and 9.9 . . . Elon R. Musk . . . ."); *Crispo Dismissal Decision*, 2022 WL 6693660, at \*2 ("Under Delaware law, only parties to a contract and intended third-party beneficiaries have standing to sue for breach of the contract."); *see also NAMA Hldgs., LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007) ("As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions.").

[33] *Madison Realty P'rs 7, LLC v. ISA P'ship Liquidity Inv.*, 2001 WL 406268, at \*5 (Del. Ch. April 17, 2001)(citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386–87 (Del. 1990)).

[34] *See Crispo Dismissal Decision,* 2022 WL 6693660, at \*2–11; *see also Orban v. Field*, 1993 WL 547187, at \*9 (Del. Ch. Dec. 30, 1993) (rejecting argument that stockholder had third-party beneficiary status to enforce a merger agreement, stating that "[t]he idea of shareholders having directly enforceable rights as third[-]party beneficiaries to corporate contracts is . . . one that should be resisted" as "[o]ne of the consequences of the limited liability that shareholders enjoy is that the law treats corporations as legal persons not simply agents for shareholders"); *Amirsaleh v. Bd. of Trade of the City of New York*, 2008 WL 4182998, at \*4 (Del. Ch. Sept. 11, 2008) (observing that this court has "previously bristled at the notion that a stockholder could have 'directly enforceable rights as third-party beneficiaries to corporate contracts'" (quoting *Orban*, 1993 WL 547187, at \*9)).

need to dive into the nuances of the parties' respective privity arguments. Regardless of whether Plaintiff was in privity with the plaintiff in *Crispo*, the reasoning of the *Crispo* decisions apply. That is, Plaintiff's claims fail on the merits.

Plaintiff argues that he has third-party beneficiary status to enforce Section 8.3 of the Merger Agreement, which protected Twitter stockholders from liability in case Twitter breached the Merger Agreement and obligated the buyers to pay a termination fee to Twitter in the event of breach. [35] Plaintiff contends that when Musk unilaterally terminated the Merger Agreement, the buyers became obligated to pay the termination fee under Section 8.3. Plaintiff further argues that he had a vested right to a proportionate amount of the termination fee.[36]

This argument does not work for a few reasons. For one, Section 8.3 provides a remedy "for all losses and damages suffered as a result of the failure of the transactions contemplated by this Agreement."[37] As Plaintiff acknowledges, the transaction did not fail. The Merger closed on the terms set forth in the Merger Agreement.[38] Thus, no one has a claim to the termination fee under the plain language of the Merger Agreement. Also, the court previously addressed and rejected aspects of Plaintiff's argument in *Crispo*. As discussed in that decision, because the buyers are not seeking damages from Plaintiff or any Twitter stockholder, Section 8.3

---

[35] Pl.'s Answering Br. at 34–35 (citing Merger Agr. § 8.3).

[36] *Id.* at 30–31.

[37] Merger Agr. § 8.3(c).

[38] Compl. ¶ 37.

is not at issue.[39] And any termination fee paid by the buyers would have been owed to Twitter, not its stockholders, under the language of Section 8.3.[40]

Plaintiff's implied covenant claim similarly fails because Plaintiff did not allege a contractual relationship between him and Defendants arising from the Merger Agreement.

Plaintiff's request for declaratory relief depends on Musk's alleged breach of the Merger Agreement. Because Plaintiff lacks standing to pursue those claims, this claim too fails.

Counts I, II, and VI therefore fail to state a claim. Musk's consent to jurisdiction under the Merger Agreement extended only to claims under that agreement. Plaintiff does not state a claim under the Merger Agreement because Plaintiff lacks standing to do so. Thus Plaintiff cannot invoke the contractual consent to jurisdiction in the Merger Agreement as a basis for personal jurisdiction over Musk.[41] The claims against Musk are therefore dismissed without prejudice under Rule 12(b)(2) for lack of personal jurisdiction.

---

[39] *Crispo Mootness Decision*, 304 A.3d at 584–85.

[40] Meger Agr. § 8.3(c) ("[E]xcept in the case of knowing and intentional breach of this Agreement. . . the Company's right to receive payment from the Parent of the Parent Termination Fee . . . shall constitute the sole and exclusive monetary remedy of the Company against the Parent, Acquisition Sub and the Equity Investor[.]").

[41] *See Multi-Fineline Electronix, Inc. v. WBL Corp.*, 2007 WL 431050, at *6–7 (Del. Ch. Feb. 2, 2007) (holding that where the complaint did not state a claim within the scope of the defendant's contractual consent, the consent was "unavailable as means by which to obtain personal jurisdiction over" the defendant).

## B. Failure To State A Claim

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[42] When considering such a motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true, . . . draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[43] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[44]

### 1. Breach Of Contract And Implied Covenant (Counts I, II, and VI)

As discussed in Section A of the Legal Analysis, Plaintiff lacks standing to pursue his contract claims. Therefore, Counts I, II, and VI are dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 2. Promissory Estoppel (Count III)

In Count III for promissory estoppel, Plaintiff claims that Defendants (through Musk) made a promise to buy Twitter and later broke that promise by seeking to terminate the Merger.[45] He alleges that Musk's promise to buy Twitter induced him

---

[42] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[43] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[44] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[45] Compl. ¶¶ 48–52.

to buy stock, and he was harmed when he sold his stock at a loss.[46]  Under Delaware law, "[p]romissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue."[47]  Plaintiff's claim of promissory estoppel implicates conduct governed by a fully integrated, enforceable contract—the Merger Agreement.  If Plaintiff is arguing his claim should survive because he is not a party to the Merger Agreement, he has not identified a promise beyond the Merger Agreement that Musk made to him to induce him to purchase stock.  Count III is dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 3.    Breach Of Fiduciary Duties (Counts IV, V)

In Counts IV and V, Plaintiff claims that Defendants breached their fiduciary duties and aiding and abetted breaches of fiduciary duty.  Plaintiff alleges that Defendants and Twitter breached fiduciary duties owed to him by failing to "protect the value of [his] rights, interests, and securities[.]"[48]  He alleges that Defendants drove Twitter's stock price down so that Musk could renegotiate and mark down the Merger consideration.[49]

---

[46] *Id.*

[47] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013).  Plaintiff argues that this legal proposition does not bind a court of equity. Pl.'s Answering Br. at 46.  But this court applies legal principles to contract claims. *See, e.g., Kuramo Cap. Mgmt. LLC v. Seruma,* 2024 WL 1888216, at *40 (Del. Ch. Apr. 30, 2024) (rejecting a promissory estoppel claim in favor of an enforceable contract); *Neurvana Med., LLC v. Balt US, LLC*, 2020 WL 949917, at *21 (Del. Ch. Feb. 27, 2020) (rejecting promissory estoppel claim based on a contract's integration clause).

[48] Compl. ¶ 57.

[49] *Id*. ¶¶ 53–65.

Defendants advance many arguments for why Counts IV and V fail.[50] One suffices. Setting aside the issue of whether Defendants owed any fiduciary duties, Plaintiff forfeited his right to claim breach of fiduciary duties when he sold off his shares. "When a stockholder sells shares, the right to bring a cause of action for breach of fiduciary duty, and the right to benefit from any remedy obtained on that cause of action, are property rights associated with the shares that pass to the buyer as an incident of the transfer of shares."[51] Plaintiff sold his shares on July 11, 2022. His ability to assert claims for breach of fiduciary duty passed with the shares. He therefore lacks standing to pursue those claims here.

An aiding and abetting claim, "may be summarily dismissed based upon the failure of the breach of fiduciary duty claims[.]"[52] Plaintiff's aiding and abetting claim thus fails for lack of a predicate breach.

Counts IV and V are dismissed under Rule 12(b)(6) as to the remaining Defendants.

---

[50] Defs.' Opening Br. at 29–34.

[51] *Quadrant Structured Prods. Co. v. Vertin,* 102 A.3d 155, 179 (Del. Ch. 2014); *see also Urdan v. WR Cap. P'rs, LLC,* 2019 WL 3891720, at *11–12 (Del. Ch. Aug, 19, 2019), *aff'd,* 244 A.3d 668 (Del. 2020) ("[T]he right to assert a direct claim is a property right associated with the shares. Consequently, unless the seller and buyer agree otherwise, the ability to assert a direct claim and the ability to benefit from any remedy pass with the shares.") (internal citation omitted).

[52] *In re Volcano Corp. S'holder Litig.*, 143 A.3d 727, 750 (Del. Ch. 2016) (quoting *In re KKR Fin. Hldgs. LLC S'holder Litig.*, 101 A.3d 980, 1003 (Del. Ch. 2014), *aff'd sub nom. Corwin v. KKR Fin. Hldgs. LLC,* 125 A.3d 304 (Del. 2015)).

### 4. Unjust Enrichment (Count VII)

In Count VII, Plaintiff claims that Defendants "created a valuable option for himself to negotiate a $13 billion discount" when he tweeted about Twitter users and was thereby unjustly enriched.[53]

To state a claim for unjust enrichment, a plaintiff must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[54]

Delaware law requires a direct relationship between the defendant's alleged enrichment and the plaintiff's alleged harm "to ensure that a court accurately can reverse the unjust retention of a benefit to the loss of another. Where the relationship between the impoverishment and enrichment is attenuated or speculative, the court has no such assurance."[55] "An enrichment must not be speculative, attenuated, or too indirect to support the loss."[56]

Plaintiff's unjust enrichment claim fails here because the relationship between the alleged enrichments and harm is too attenuated. Plaintiff alleges that Musk derived two enrichments. First, he "enjoyed worldwide publicity . . . related to his wealth, power and reputation that he will monetize after the [M]erger."[57] Second, he

---

[53] Compl. ¶¶ 72–79.

[54] *Addy v. Piedmonte*, 2009 WL 707641, at \*22 (Del. Ch. Mar. 18, 2009).

[55] *Vichi v. Koninklijke Philips Elec. N.V.*, 62 A.3d 26, 61 (Del. Ch. 2012).

[56] *OptimisCorp v. Atkins*, 2023 WL 3745306, at \*25 (Del. Ch. June 1, 2023) (cleaned up).

[57] Compl. ¶ 73.

derived the opportunity to renegotiate the Merger Agreement.[58]  Plaintiff contends

that although Musk ultimately closed on the Merger Agreement's terms, this does

not alter the fact the opportunity to renegotiate was valuable.  Plaintiff's alleged

harm resulted from a stock sale motivated by Musk reneging on a deal that eventually

closed.[59]  Even if the alleged enrichments were legally cognizable, they bear no

relationship to Plaintiff's alleged harm.

Plaintiff also alleges that Musk violated SEC disclosure rules by purchasing

9.1% of Twitter stock before disclosing that he had reached the 5% ownership

disclosure threshold.[60]  But Musk allegedly violated these disclosure rules before

entering into the Merger Agreement and before Plaintiff bought his Twitter stock.[61]

It is hard to fit these allegations into an unjust enrichment framework.

Count VII is dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 5.    Negligent Misrepresentation (Count IX)

In Count IX, Plaintiff alleges Defendants (through Musk) harmed Plaintiff

through two representations.  First, Musk represented that he would buy Twitter

without any conditions when he entered into the Merger Agreement on April 24,

2022, causing Plaintiff to purchase stock in anticipation of the Merger.[62]  Musk then

---

[58] *Id.* ¶ 74.

[59] Pl.'s Answering Br. at 52–54.

[60] Compl. ¶ 76.

[61] *Id.* ¶¶ 14–15.

[62] *Id.* ¶ 96.

depressed the stock price when he purported to terminate the transaction due to user accounts, causing Plaintiff to sell stock at a significant loss.[63]

To state a claim for equitable fraud or negligent misrepresentation, a plaintiff must allege either "a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship)" or "justification for a remedy that only equity can afford."[64] Plaintiff does neither here. He did not enjoy a fiduciary or other special relationship with Defendants. And he has not identified any remedy that only equity can afford.

Count IX is dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 6.     Common-Law Fraud (Count X)

In Count X, Plaintiff claims that Defendants (through Musk) defrauded him by representing that Defendants would buy Twitter and then stating that they would terminate the agreement.

To state a claim for fraud, a plaintiff must allege: "1) a false representation, usually one of fact . . . ; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff[.]"[65]

---

[63] *Id.*

[64] *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009), *aff'd sub nom Walters v. Envo, Inc,* 2013 WL 1283533 (Del. 2013) (TABLE).

[65] *Hauspie v. Stonington*, 945 A.2d 584, 586 (Del. 2008) (quoting *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992)).

16

Fraud must be pled with particularity under Rule 9. This requires a plaintiff to plead "the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[66]

Defendants advance many arguments for dismissal.[67] Once again, one suffices. Plaintiff has failed to adequately allege that Musk intended to induce him to buy or sell Twitter stock. There are no allegations that Musk lied when he first announced that he entered into the Merger Agreement, which led Plaintiff to buy Twitter stock. And Plaintiff does not allege that Musk lied when he sent the Termination Letter to induce Plaintiff to sell stock. Under Plaintiff's theory, Musk sent the Termination Letter to gain leverage to renegotiate the deal price and not with intent to cause Plaintiff to act. This allegation does not support Plaintiff's fraud claim.

Count X is dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 7. Consumer Fraud (Count VIII)

In Count VIII, Plaintiff claims that Defendants violated Delaware's Consumer Fraud Act, 6 *Del. C.* §§ 2513(a) and 2523, by engaging in "unlawful trade practices."[68] Under Section 2153(a):

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

---

[66] *Valley Joist BD Hldgs., LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021).

[67] Defs.' Opening Br. at 41–47.

[68] *See* Compl. ¶¶ 70–90.

17

connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[69]

To bring a cause of action under the Consumer Fraud Act, a plaintiff must allege "(1) a defendant engaged in conduct which violated the statute; (2) the plaintiff was a 'victim' of the unlawful conduct; and (3) a causal relationship exists between the defendant's unlawful conduct and the plaintiff's ascertainable loss."[70] The Consumer Fraud Act is meant to be "liberally construed"[71] and is less stringent than traditional legal and equitable actions for fraud, misrepresentation, and deceit.[72]

Plaintiff alleges that Defendants, through Musk, violated the Consumer Fraud Act through false or misleading tweets about Twitter and Musk's acquisition of the platform.[73] Defendants advance many dismissal arguments,[74] but again one suffices. The Consumer Fraud Act "protects consumers who are deceived while purchasing merchandise; it does not protect customers who have purchased merchandise and are seeking to receive a benefit of that purchase."[75] Plaintiff's injuries stem from his lost

---

[69] 6 *Del. C.* § 2513(a).

[70] *Teamsters Loc. 237 Welfare Fund v. AstraZeneca Pharm. LP,* 136 A.3d 688, 693 (Del. 2018).

[71] *State ex rel. Brady v. Preferred Florist Network, Inc.*, 791 A.2d 8, 20 (Del. Ch. 2001).

[72] *AstraZeneca Pharm. LP,* 136 A.3d at 693 (describing the differences between a consumer fraud claim and analogous common-law claims).

[73] Compl. ¶¶ 79–86.

[74] Defs.' Opening Br. at 47–50.

[75] *Price v. State Farm Mut. Auto. Ins.*, 2013 WL 1213292, at *11 (Del. Super. Ct. Mar. 15, 2013), *aff'd*, 77 A.3d 272 (Del. 2013)

merger premium, which is a benefit of stock ownership, rather than any misrepresentation related to the security itself.

Count VIII is dismissed under Rule 12(b)(6) as to the remaining Defendants.

### 8. Negligent Performance (Count XI)

In Count XI, Plaintiff asserts a claim for negligent performance, alleging Defendants (through Musk) falsely represented that they would buy Twitter without due diligence, falsely represented that they would not buy it, and bought Twitter without any diligence.[76] He argues these actions were negligent.

Negligence is a tort claim, typically "defined as the failure to meet the standard of care which the law requires."[77] To state a claim for negligence, a plaintiff must allege that the "defendant owed plaintiff a duty of care; defendant breached that duty; and defendant's breach was the proximate cause of plaintiff's injury."[78] "Whether a duty exists is entirely of question of law to be determined by the court."[79] "The scope of the duty of care often turns on the relationship between the party claiming harm and the party charged with negligence."[80] A plaintiff states a negligent performance claim where:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things,

---

[76] Compl. ¶ 100.

[77] *Furek v. Univ. of Delaware,* 594 A.2d 506, 516 (Del. 1991).

[78] *New Haverford P'ship v. Stroot,* 772 A.2d 792, 798 (Del. 2001).

[79] *Kuczynski v. McLaughlin,* 835 A.2d 150, 153 (Del. Super. Aug. 27, 2003) (quoting *Shively v. Ken Crest Centers for Exceptional Persons,* 2001 WL 209910, at *5 (Del. Super. Jan. 26, 2001)) (cleaned up).

[80] *Furek,* 594 A.2d at 516.

19

is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.[81]

Plaintiff's claim fails because he has not alleged any facts showing that Musk agreed to render any services to him or that Defendants otherwise owed Plaintiff a duty of care.

Count XI is dismissed under Rule 12(b)(6) as to the remaining Defendants.

## III.   CONCLUSION

Musk's Rule 12(b)(2) motion and the other Defendants' Rule 12(b)(6) motion are granted.  In briefing, Plaintiff requested leave to amend to correct any deficiencies with his pleading.  This court may relax Court of Chancery Rule 15(aaa) in the exceptional case, but this is not an exceptional case.  Plus, given the legal defects in Plaintiff's claims, it is unclear what Plaintiff might allege to resuscitate his claims. Plaintiff's request is therefore denied.  In his May 5, 2025 submission, Plaintiff requested leave to amend his complaint for a different reason—to add allegations concerning a federal securities action against Musk.[82]  Because the court finds that it cannot exercise jurisdiction over Musk, and this decision dismisses the rest of Plaintiff's claims with prejudice,[83] his requests to amend are denied.

---

[81] *Griffith v. Energy Indep., LLC*, 2017 WL 6403509, at \*2–3 (Del. Super. Dec. 13, 2017 (quoting Restatement (Second) of Torts § 323 (Am. Law. Inst. 1965)).

[82] Dkt. 33 at 6.

[83] *See* Ct. Ch. R. 15(a)(5)(B) ("[A] dismissal under Rule 12(b)(6) . . . will be with prejudice . . . unless the Court for good cause shown dismisses the complaint without prejudice.").  Plaintiff has not shown good cause here.

20